Rel: April 11, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0543

_____

**Hembree Insurance Trust**

**v.**

**Maples Industries, Inc.**

**Appeal from Jackson Circuit Court
(CV-24-900026)**

STEWART, Chief Justice.

Hembree Insurance Trust ("Hembree") appeals from a summary judgment entered against it and in favor of Maples Industries, Inc. ("Maples"), by the Jackson Circuit Court ("the trial court"). We reverse and remand.

<u>Facts and Procedural History</u>

In February 2019, Hembree and Maples entered into a lease agreement ("the lease") by which Hembree leased a 135,847-square-foot industrial building located in Scottsboro ("the property") to Maples. The lease was for a term of five years, beginning on January 1, 2020, and ending on December 31, 2024. The lease provided that Maples was responsible for maintenance of the property and that "[Maples] will be responsible for the replacement or repair of the roof. [Hembree] shall pay 50% of agreed upon roof replacement or agreed upon major repair costs." At the time the lease was executed, Maples was already in possession of the property, and counsel for Maples represented to the trial court that Maples had initially leased the property from Hembree in 2011 and had renewed that lease in 2014.

On March 3, 2024, Hembree initiated an action against Maples in the trial court asserting a breach of the lease. Specifically, Hembree

alleged that Maples had failed to repair or replace the property's roof as required by the lease. On April 18, 2024, Maples moved pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss Hembree's action. In its motion, Maples argued that Hembree did not actually own the property and that, therefore, the lease was "void ab initio." In support of its motion, Maples attached a 2014 warranty deed indicating that Hembree had transferred its interest in the property to Woods Cove Industrial Property, LLC ("Woods Cove").

In its response to the motion to dismiss, Hembree argued that it was the sole member of Woods Cove and that it had had the authority to lease the property. Hembree attached the Woods Cove articles of organization and operating agreement to its response. Those documents indicated that Woods Cove had been organized in 2014 for the purpose of acquiring property that it could, among other things, "lease." The Woods Cove operating agreement and articles of organization identified Hembree as the "Sole Member," and the operating agreement granted Hembree the power to manage Woods Cove and the "right to act as an agent of [Woods Cove]."

3

On May 7, 2024, the trial court conducted a hearing on Maples's motion and requested that the parties each submit proposed orders.[1] On July 17, 2024, the trial court entered a judgment stating that it was treating Maples's motion to dismiss as a motion for a summary judgment, which it proceeded to grant. The trial court's judgment explained that, because Woods Cove -- not Hembree -- owned the property, the lease was "null and void in all respects." Hembree appeals.

<u>Standard of Review</u>

Because the trial court treated Maples's Rule 12(b)(6) motion to dismiss as a motion for a summary judgment, we review its judgment under the summary-judgment standard of review:

> "This Court's review of a summary judgment is de novo. <u>Williams v. State Farm Mut. Auto. Ins. Co.</u>, 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; <u>Blue Cross & Blue Shield of Alabama v. Hodurski</u>, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. <u>Wilson v. Brown</u>, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is

---

[1]Hembree's proposed order expounded on several legal theories to which it had alluded in the hearing, including the argument that Maples was estopped from denying its obligations under the lease.

no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. <u>Bass v. SouthTrust Bank of Baldwin County</u>, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12."

<u>Dow v. Alabama Democratic Party</u>, 897 So. 2d 1035, 1038-39 (Ala. 2004).

<u>Analysis</u>

The trial court's judgment in this case declared the lease to be "null and void in all respects" because, it concluded, the property was owned by Woods Cove and not by Hembree, the named lessor. On appeal, Hembree argues, among other things, that, as the sole member and manager of Woods Cove, it had the authority to possess and lease the property and that the trial court, therefore, erred as a matter of law in holding that the lease was void.

It has been recognized that, generally, a party need not be the owner of a property to lease it to another. "While the right to let property is an incident of the title and possession, a lessor may validly lease property to another, despite the fact that the title to the property is in a third person, if the lessor lawfully possesses the property ...." 49 Am. Jur. 2d <u>Landlord & Tenant</u> § 3 (2018) (footnote omitted). Stated another way:

"The relation of landlord and tenant may be created although the landlord is not the owner of the property.

5

However, where the lessor has neither title nor possession, the lease is of no effect. A licensor or lessor must possess some right, title, or interest in the land, which enables them to lease or license property to another person. Otherwise, any attempt at leasing the property is void."

52 C.J.S. Landlord & Tenant § 503 (2024) (footnotes omitted). Moreover, it has long been the rule in Alabama that a tenant in possession of a leased property generally cannot dispute the landlord's title to that property. See, e.g., § 35-9-1, Ala. Code 1975 ("The tenant cannot dispute his landlord's title …."), and Ross v. Lewis, 44 So. 3d 1106, 1109 (Ala. Civ. App. 2010). The reasons for that rule were explained in Davis v. Williams, 130 Ala. 530, 30 So. 488 (1901):

"'For reasons of public policy a tenant is never allowed to dispute his landlord's title after having accepted possession under him. This rule is elementary. The estoppel extends equally to landlord and tenant; so that while the tenant is estopped from denying the landlord's title, the landlord cannot allege that he had no title at the time of the demise. … The foundation of the estoppel is the fact of the one obtaining possession and enjoying possession by the permission of the other. And so long as one had this enjoyment he is prevented by this rule of law from turning round and saying his landlord has no right or title to keep him in possession.'"

130 Ala. at 535, 30 So. at 490 (quoting 2 McAdam, Landlord & Tenant, p. 1341).

6

In this case, the record reflects that Hembree was the sole and controlling member of Woods Cove and had been granted the authority by Woods Cove's governing documents to lease the property. It is undisputed that Hembree placed Maples in possession of the property as called for by the lease, that Maples paid rent to Hembree, and that Maples had the benefit of its possession of the property. Under these circumstances, Maples was effectually estopped under Alabama law from challenging the lease on the basis that Hembree was the named lessor. See Whaley v. Wynn, 208 Ala. 342, 343, 95 So. 16, 17 (1922) ("In this case the lease was made in the name of the owner's agent …. By [the tenant's] acceptance of such a lease and occupation of the premises thereunder, the tenant is effectually estopped to deny the right of [that agent] to [bring an unlawful-detainer action]."). Regardless, construing the limited evidence submitted below in a light most favorable to the nonmovant Hembree, we cannot say as a matter of law that, under the circumstances, Hembree itself did not hold a sufficient interest in the property to create a valid lease between it and Maples. Accordingly, we

7

reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.[2]

REVERSED AND REMANDED.

Wise, Mitchell, and McCool, JJ., concur.

Sellers, J., concurs in the result.

---

[2]Maples also contends on appeal that there was no "meeting of the minds" regarding ownership of the property. Maples's assent to the lease, however, was evidenced by its signature on the lease. See Lilley v. Gonzales, 417 So. 2d 161, 163 (Ala. 1982). Whether the lack-of-ownership issue may support some other ground for avoidance of the lease (i.e., fraud, misrepresentation, mistake, etc.) is not before us, and we therefore express no opinion on the matter.